UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEVON JACKSON, | CASE NO. C14-1142JLR |
| Petitioner, | ORDER |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## I.    INTRODUCTION

Before the court is Petitioner Devon Jackson's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (*See* Pet. (Dkt. # 1); Am. Pet. (Dkt. # 13); Mem. in Support (Dkt. # 15).)  The court has considered Mr. Jackson's petition, all submissions filed in support of and opposition thereto, the balance of the record, and the applicable law.  Being fully advised, the court DENIES Mr. Jackson's petition.

//

//

ORDER- 1

## II.     BACKGROUND

The facts underlying this matter are known to the parties, and the court will not repeat them here.  Procedurally, Mr. Jackson pleaded guilty pursuant to a written plea agreement to a two-count information alleging distribution of controlled substances and money laundering.  (*See* CR12-0169JLR, Dkt. # 24.)  The information alleged:

> In a continuing offense beginning at a time unknown, but within the last five years, and continuing to on or about May 23, 2012, within the Western District of Washington, the District of Nevada, and elsewhere, DEVON JACKSON, and others, known and unknown, knowingly and intentionally did distribute substances controlled under Title 21, United States Code, Section 812, including methamphetamine, 3,4 methylenedioxymethamphetamine (MDMA), and Benzylpiperazine (BZP).
>
> All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

(CR12-0169JLR, Dkt. # 22.)

Prior to pleading guilty before Magistrate Judge James P. Donohue, Mr. Jackson was placed under oath.  (CR12-0169JLR, Dkt. # 90 at 3:2.)  Mr. Jackson executed a document entitled "Consent to Rule 11 Plea in a Felony Case Before a United States Magistrate Judge."  (CR12-0169JLR, Dkt. # 25.)  During the change of plea hearing, Magistrate Judge Donohue asked Mr. Jackson, among other things, "[h]as anybody promised you what sentence the Court will impose?"  Mr. Jackson responded, "[n]o, they haven't."  (CR12-0169JLR, Dkt. # 90 at 13:9-11.)  In addition, Magistrate Judge Donohue asked Mr. Jackson, "are you satisified with the representation and the advice that you received from Mr. Cross, your attorney in this matter?"  Mr. Jackson answered, "Yes, sir."  (CR12-0169JLR, Dkt. # 90 at 10:6-9.)

1    Judge Donohue submitted a report and recommendation to this court on November

2    9, 2012.  (CR12-0169JLR, Dkt. # 27.)  The court accepted Mr. Jackson's guilty plea and

3    adjudication on November 26, 2012.  (CR12-0169JLR, Dkt. # 28.)

4    On January 28, 2013, Mr. Jackson's initial attorney filed a motion to withdraw as

5    counsel.  (CR12-0169JLR, Dkt. # 31.)  The court held a hearing on February 1, 2013,

6    granted the motion to withdraw, and appointed Lee Edmond to represent Mr. Jackson the

7    same day.  (CR12-0169JLR, Dkt. ## 38, 39.)

8    The court held Mr. Jackson's sentencing hearing on July 29, 2013.  Mr. Jackson's

9    counsel, Mr. Edmond, filed a variety of documents in anticipation of the sentencing

10   hearing which related to Mr. Jackson's argument concerning "the injustice of adhering to

11   the empirically-flawed U.S. Sentencing guideline for MDMA

12   [methylenedioxymethamphetamine]."  (CR12-0169JLR, Dkt. # 41 at 1:25-27.)  The

13   Probation Office calculated a total offense level of 31, a criminal history category III, and

14   a standard sentencing range of 135-168 months.  The government ultimately

15   recommended a below-guideline sentence of 120 months.  The court agreed with the

16   Probation Office and the government and found a total offense level of 31, a criminal

17   history category III, and a sentencing range of 135-168 months.  (CR12-0169JLR, Dkt. #

18   89 at 35:8-15.)  After considering the § 3553(a) factors, the court departed significantly

19   from the Guidelines range and imposed a sentence of 96 months of incarceration.

20   (CR12-0169JLR, Dkt. # 89 at 39:22.)

21   Mr. Jackson filed a notice of appeal, but his appeal was ultimately dismissed on

22   November 20, 2014, after Mr. Jackson's appellate counsel filed a brief pursuant to

ORDER- 3

1   *Anders v. California*, 386 U.S. 738 (1967).  (CR12-0169JLR, Dkt. # 93.)  Mr. Jackson's

2   judgment became final on November 20, 2014.

3        Prior to his appeal, Mr. Jackson filed his initial motion pursuant to 28 U.S.C.

4   § 2255 on July 28, 2014.  (Pet.; *see also* CR-0169JLR, Dkt. # 91.)  After obtaining leave

5   of court, Mr. Jackson filed his amended petition on January 26, 2015 (*see* Am. Pet.), and

6   filed his final memorandum in support of his 28 U.S.C. § 2255 petition on February 23,

7   2015 (*see* Mem. in Support).

8                    **III.   ANALYSIS**

9        Mr. Jackson advances various factual and legal arguments in his motion including:

10  (1) that he did not receive lab reports for the controlled substances he distributed prior to

11  pleading guilty; (2) that his first attorney promised that Mr. Jackson would receive a

12  thirty-six month sentence; (3) that the assigned Assistant U.S. Attorney "tampered" with

13  Mr. Jackson's State misdemeanor charge; (4) that Mr. Jackson's counsel was not present

14  at the signing of the plea agreement; (5) that Mr. Jackson was sentenced "pursuant to a

15  drug table requiring a 500 to 1 multiplication factor instead of the 100 to 1 factor applied

16  to pills containing BZP;" (6) that Mr. Jackson was improperly sentenced by a magistrate

17  judge; and finally, (7)-(10) several arguments related to the claim that Mr. Jackson

18  pleaded guilty to distribution of 3,4 methylenedioxymethamphetamine ("MDMA"), even

19  though laboratory reports did not indicate the presence of MDMA.

20       All of Mr. Jackson's grounds, except for grounds (3) and (7) relate to alleged

21  ineffective assistance of counsel.  The court addresses the ineffective assistance of

22  counsel grounds first.  The court rejects each ground as explained below.

**A.  Ineffective Assistance of Counsel (Grounds, 1-2, 4-5, 9-10).**

Mr. Jackson's various claims related to ineffective assistance of counsel (claims 1, 3-5, 7-10) are controlled by *Strickland v. Washington*, 466 U.S. 668 (1984).  To show ineffective assistance under *Strickland*, a defendant must prove that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 688, 694.  With respect to the first prong, the defendant must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Id.* at 690.  At this step, judicial scrutiny is highly deferential:  there is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance.  *Id* at 689.  With respect to the second prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

**1.     Ground 1 – Lab Results**

Mr. Jackson claims that his attorney was ineffective because he did not challenge the content or weight of the pills in controversy prior to Mr. Jackson's guilty plea.  He also argues that his attorney was ineffective because he allowed Mr. Jackson to plead guilty to distribution of MDMA, even though the lab reports do not indicate the presence of MDMA.  (Mem. in Support at 3.)  These claims have no merit.  Mr. Jackson did not

1  plead guilty to distribution of MDMA, but rather to distribution of controlled substances

2  including methamphetamine, 3,4 methylenedioxymethamphetamine (MDMA), and

3  Benzylpiperazine (BZP).  (*See* CR12-0169JLR, Dkt. # 22 (information); Dkt. # 26 (plea

4  agreement).)  The factual basis of the plea agreement describes the drug transactions,

5  including the quantity of pills (*see* CR12-0169JLR, Dkt. # 26 at 5-6).  Accordingly, Mr.

6  Jackson cannot claim that he and his counsel did not know the exact substances and

7  weights to which he was pleading guilty.  Finally, Mr. Jackson's argument that his

8  attorney did not challenge the weight of the pills Mr. Jackson distributed is belied by the

9  record.  (CR12-0169JLR, Dkt. # 50 at 7-8; Dkt. # 89 at 15-18.)  His attorney did assert

10  that challenge; the court simply did not accept it.  (*See* CR12-0169JLR, Dkt. # 89 at 35:8-

11  15.)

12  **2.   Ground 2 – Promise of a Specific Sentence**

13  Mr. Jackson claims that his attorney induced him to enter into a guilty plea by

14  suggesting a favorable sentence.  (Mem. in Support at 6.)  Specifically, Mr. Jackson

15  claims that his attorney promised him that the court would sentence him to 36 months of

16  imprisonment.  (*Id.*)  This argument is contrary to Mr. Jackson's written plea agreement

17  in which he acknowledged that no one had "promised or guaranteed what sentence the

18  Court [would] impose," (CR12-0169JLR, Dkt. # 26 ¶ 7), and to the record at his change

19  of plea hearing in which Mr. Jackson responded negatively to magistrate Judge

20  Donohue's inquiry regarding whether anyone had promised Mr. Jackson what sentence

21  the court would impose.  (CR12-0169JLR, Dkt. # 90 at 13:9-11.)  Accordingly, the court

22  finds that there is no support in the record for Mr. Jackson's second ground.

### 3.   Ground 4 – Defense Counsel Not Present at Signing of Plea Agreement

Mr. Jackson alleges that his attorney was not present when he signed his plea agreement and that he had no explanation as to what he was signing.  However, Mr. Jackson offers no evidence and the record of his plea colloquy contradicts his allegations. In his plea colloquy, Mr. Jackson acknowledges that he reviewed the written plea agreement and discussed it thoroughly with his attorney.  (CR12-0169JLR, Dkt. # 90 at 10-11.)  He also denies needing any additional time to consider the plea agreement.  (*Id.*) He also acknowledged being satisfied with his legal representation and the advice he had received.  (*Id.* at 6-9.)  Accordingly, the court finds that there is no support for Mr. Jackson's fourth ground in the record, and therefore the court rejects it.

### 4.   Grounds 5, 8-10 – Utilizing the MDMA Guidelines

Mr. Jackson bases several grounds in his petition on the premise that utilizing the MDMA guidelines under USSG § 2D1.1 was inappropriate because laboratory analysis determined that the substance he distributed consisted of a mixture of caffeine, methamphetamine, and/or BZP.  Specifically, Mr. Jackson argues that his attorney was ineffective because he was improperly sentenced "pursuant to a drug table requiring a 500 to 1 multiplication factor."  (Mem. in Support at 8-10; Am. Pet. at 2 (Ground 5).) Mr. Jackson also makes three separate arguments that his counsel was ineffective because Mr. Jackson was pleaded guilty to MDMA distribution even though the laboratory

1 analysis showed he distributed "BZP."  (Mem. in Support at 12-18; Am. Pet at 2

2 (Grounds 8, 9, 10).)  As discussed below, the court rejects all of these grounds.[1]

3   **a. The Parties Agreed to Use the MDMA Guidelines to Avoid a Higher**
     **Guidelines Range and a Mandatory Minimum Sentence**

4

5    In the plea agreement, the parties stipulated that:

6   . . . the base offense level for the approximately 500 "ecstasy" pills
   distributed on January 27, 2012, the approximately 1,000 "ecstasy" pills

7   distributed on March 6, 2012 and April 25, 2012, and the approximately
   5,000 "ecstasy" pills possessed on May 23, 2012, should be determined

8   under USSG § 2D1.1 using the 3,4 methylenedioxymethamphetamine
   (MDMA) guideline (1 gm of MDMA equivalent to 500 grams of

9   marijuana) rather than the methamphetamine guideline or the N
   Benzylpiperazine (BZP) conversion factor, based on the fact that defendant

10   believed the pills contained "ecstasy" and sold them to the US [sic] as
   "ecstasy."

11 (CR12-0169JLR, Dkt. # 26 at 7, n.1.)  The parties agreed to the MDMA Guidelines

12 because Mr. Jackson believed that he was selling MDMA to the Drug Enforcement Agent

13 working in an undercover capacity ("UC").  Moreover, by so agreeing, the government

14 conceded that it would not ask the court to utilize the methamphetamine Guidelines to

15 determine Mr. Jackson's sentence.  If the parties had utilized the methamphetamine

16 _____

17   [1] Mr. Jackson asserts in ground eight that the court lacks subject matter jurisdiction.
 (Am. Pet. at 2.)  His rationale, however, appears to be similar to that in grounds five, nine, and

18 ten in that it is based on the alleged disparity between the laboratory results of the pills he
 distributed and the indictment.  *See* Mem in Support at 12 ("The Court lacked jurisdiction to hear

19 and enter judgment . . . where the evidence offered at sentencing failed to the prove the
 allegations set forth in the indictment. . . . Although MDMA distribution was alleged in the

20 indictment, no test results proved positive for its presence in the purchased pills.").)  In addition,
 he also appears to argue that ground eight is also based on ineffective assistance of counsel.  (*See*

21 *id.* at 14 ("Accordingly, Petitioner has met the **Strickland** two-prong test . . . .") (bolding in
 original).)  In any event, as discussed below, Mr. Jackson's argument is based on a

22 mischaracterization of the crime for which he was indicted.  Accordingly, there is no basis for his
 jurisdictional argument or his ineffective assistance of counsel assertion in ground eight.

ORDER- 8

1  Guidelines based on the laboratory results, Mr. Jackson would be facing a much higher

2  guideline range.  *See* USSG § 2D1.1.

3          Further, based on the laboratory results, the government could have charged Mr.

4  Jackson with distribution of methamphetamine under 21 U.S.C. § 841(a)(1), (b)(1)(A),

5  and Mr. Jackson would have been facing a 10-year mandatory minimum.  (*See* Mem. in

6  Support Exs. A, B (attaching laboratory reports).)  Indeed, due to Mr. Jackson's prior

7  conviction for a controlled substance offense (*see* CR02-0017RSM (W.D. Wash.)), he

8  would have been facing a 20-year mandatory minimum pursuant to 21 U.S.C. § 851.

9  However, partly in exchange for Mr. Jackson's agreement to the MDMA Guidelines, the

10 government elected not to seek a mandatory minimum sentence.  Thus, under the

11 circumstances, agreeing to the MDMA Guidelines was not ineffective assistance of

12 counsel, and "might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689.

13         **b.  The Court Correctly Applied the MDMA Guidelines**

14         Mr. Jackson, however, also claims that his attorneys were ineffective for failing to

15 argue based on the laboratory results that he should have been sentenced under the BZP

16 Guidelines, which have a 100:1 marijuana equivalency, rather than the MDMA

17 Guidelines, which have a 500:1 marijuana equivalency.  (Mem. in Support at 8-10; Am.

18 Pet. at 2 (Ground 5).)  He further asserts that his attorney was ineffective because Mr.

19 Jackson pleaded guilty to MDMA distribution even though the laboratory results showed

20 he distributed "BZP."  (Mem. in Support at 12-18; Am. Pet. at 2 (Grounds 8, 9, and 10).)

21         First, as noted above, the parties agreed to use the MDMA Guidelines because Mr.

22 Jackson believed that he was distributing MDMA and to avoid negative consequences for

ORDER- 9

1   Mr. Jackson in using the methamphetamine Guidelines to determine his sentence.  When

2   the parties agreed to use the MDMA Guidelines, they were fully aware of the laboratory

3   results indicating both the weight and substance of the pills sold by Mr. Jackson.  (*See*

4   CR12-0169JLR, Dkt. # 26 at 6.)

5           Further, much of Mr. Jackson's counsel's briefing to the court in anticipation of

6   Mr. Jackson's sentencing was devoted to "the injustice of adhering to the empirically-

7   flawed" MDMA Guidelines.  (*Id.* Dkt. ## 41, Exs. 1-14; 50.)  Indeed, Mr. Jackson's

8   counsel recommended that the court ignore the MDMA Guidelines and "impose a

9   sentence based on a 1:1 rather than 500:1 conversion ration to marijuana."  (*Id.* Dkt.

10  ## 41, 89 at 17:11-24.)  He also argued that the court should calculate the average dosage

11  fo each pill at 100 milligrams, rather than the 250 milligrams per weight set forth in the

12  Typical Weight Per Unit of the Sentencing Guidelines.  (*Id.* Dkt. ## 50 at 7-8, 89 at 17-

13  18.)

14          Finally, Mr. Jackson did not plead guilty to MDMA distribution.  Rather, he

15  pleaded guilty to distribution of controlled substances including methamphetamine,

16  MDMA, and BZP.  (*Id.* Dkt. # 26 at 2.)  The second element of the offense specifically

17  states the he "knew that the substances included methamphetamine, . . . MDMA, . . . BZP

18  . . . , *or some other prohibited drug.*"  (*Id.* (italics in original).)  Accordingly, the

19  elements of the offense are met and there was nothing ineffective about Mr. Jackson's

20  counsel advising him to plead as he did.  *See Carranza*, 289 F.3d at 643-44 ("[T]he

21  government did not have to prove that [the petitioner] knew the type and amount of a

22

1  controlled substance that he imported or possessed; the government need only show that

2  the Petitioner knew that he imported or possessed some controlled substance.").

3  **5.  No Prejudice**

4      Even if Mr. Jackson's attorneys had provided ineffective assistance in one of the

5  forgoing ways, Mr. Jackson was not prejudiced thereby.  Under the MDMA Guidelines,

6  Mr. Jackson's sentencing range was 135-68 months.  The government, however,

7  recommended a sentence of 120 months, which is below the Guidelines range.

8  Ultimately, the court departed below both and imposed a sentence of 96 months.  Thus,

9  the Guidelines played little role here in the sentence the court imposed.  Further, by

10  agreeing to the MDMA guidelines, Mr. Jackson avoided a 10 to 20-year mandatory

11  minimum.  Accordingly, there is nothing to suggest to the court that, even if Mr.

12  Jackson's counsel was ineffective in some way, Mr. Jackson was prejudiced in any way.

13  The court rejects Mr. Jackson's challenges to his sentence based on ineffective assistance

14  of counsel on this basis as well.

15  **B.  Ground Three – Prosecutorial Misconduct**

16      Mr. Jackson asserts that the government "tampered with [his] state misdemeanor

17  charge to aggravate [his] Federal felony charge which caused additional enhancements."

18  (Pet. at 8.)  Mr. Jackson does not offer any evidence to support his allegation.  (*See id.*)

19  Further, he does not argue this ground in his memorandum in support of his petition.

20  (*See generally* Mem. in Support.)  Moreover, this argument is covered by the waiver

21  provision in Mr. Jackson's plea agreement.  With the exception of claims related to the

22  effectiveness of his legal representation, Mr. Jackson has expressly waived both his right

1    to appeal and his right to bring a post-conviction collateral attack on his conviction or

2    sentence.  (CR12-0169JLR, Dkt. # 26 ¶ 15.)  Mr. Jackson's assertion of prosecutorial

3    misconduct is unrelated to any assertion of ineffective counsel, and therefore he has

4    waived it.  The right to bring a collateral attack is statutory and may be voluntarily and

5    knowingly waived.  *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993).

6    Accordingly, Mr. Jackson may not challenge his sentence on this ground.

7    **C.  Ground Seven – The Role of the Magistrate Judge**

8         Mr. Jackson challenges his conviction and sentence under *United States v.*

9    *Harden*, 758 F.3d 886 (7th Cir. 2014).  In *Harden*, the Seventh Circuit held that a

10   magistrate judge's acceptance of a felony guilty plea, even with the parties' consent,

11   violates the Federal Magistrates Act.  *Id.* at 891.  Here, however, the Magistrate Judge did

12   not simply accept Mr. Jackson's guilty plea following consent of the parties, but rather

13   issued a report and recommendation which the undersigned district judge then reviewed

14   de novo after the parties had had an opportunity to file objections.  (*See* CR12-0169JLR,

15   Dkt. ## 25-28.)

16        There is widespread agreement among appellate courts, including the Seventh

17   Circuit in *Harden* and (more importantly for our purposes) the Ninth Circuit, that a

18   magistrate judge may conduct a Federal Rule of Criminal Procedure 11(b) plea colloquy

19   for purposes of making a report and recommendation.  *See id.* (citing *United States v.*

20   *Reyna-Tapia*, 328 F.3d 1114, 1119-22 (9th Cir. 2003) (*en banc*); *United States v. Torres*,

21   258 F.3d 791, 796 (8th Cir. 2001); *United States v. Dees*, 125 F.3d 261, 263, 265 (5th

22   Cir. 1997); *United States v. Williams*, 23 F.3d 629, 631-34 (2d Cir. 1994)).  Because that

1    was the procedure followed here, there is no basis for Mr. Jackson's challenge to his

2    sentence under *Harden*.  Accordingly, the court rejects the challenge to Mr. Jackson's

3    sentence on that ground.

4          **D.  An Evidentiary Hearing is Not Warranted**

5          For the above stated reasons, the court denies Mr. Jackson's petition.  A district

6    court may summarily dismiss a 28 U.S.C. § 2255 petition only if the allegation, when

7    viewed against the record, do not give rise to the claim for relief or are "palpably

8    incredible or patently frivolous."  *United States v. Schaflander*, 743 F.2d 714, 717 (9th

9    Cir. 1984).  In the instant matter, the record is clear and consistent throughout.  Further,

10   there is no factual support for Mr. Jackson's conclusory allegations.  The court concludes

11   that the standard set for in *Schaflander* for summary dismissal is met.  Accordingly, the

12   court denies Mr. Jackson's petition without conducting an evidentiary hearing.

13         **E.  Certificate of Appealability**

14         Among substantial changes to federal habeas corpus procedure in the

15   Antiterrorism and Effective Death Penalty Act of 1996 is a rule that an appellant can

16   appeal the denial of a 28 U.S.C. § 2255 motion only after obtaining a "certificate of

17   appealability."  28 U.S.C. § 2253(c).  Although the statute is ambiguous, the Ninth

18   Circuit has held that a United States District Court may issue a certificate of

19   appealability.  *United States v. Mahoney*, 433 F.3d 1107, 1111 (9th Cir. 2006) (indicating

20   that it is well settled that district judges as well as circuit judges may issue certificates of

21   appealability under 28 U.S.C. § 2253(c)(1)); *United States v. Asrar*, 116 F.3d 1268, 1269

22   (9th Cir. 1997).  A court may issue a certificate of appealability only if the "applicant has

1    made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2    2253(c)(2).  The Supreme Court has elaborated that a petitioner must show that

3    "reasonable jurists could debate whether . . . the petition should have been resolved in a

4    different manner or that the issues presented were adequate to deserve encouragement to

5    proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quotations omitted).

6    Here, Mr. JAcksion has not made a substantial showing of the denial of a constitutional

7    right.  The court therefore declines to grant a certificate of appealability to Mr. Jackson.

8                          **IV.     CONCLUSION**

9           Mr. Jackson has failed to make any showing of ineffective assistance of counsel

10    and his other claims have been waived or otherwise lack merit.  Accordingly, the court

11    DENIES Mr. Jackson's 28 U.S.C. § 2255 petition.  Further, the court DISMISSES this

12    matter WITH PREJUDICE.

13           Dated this 7th day of May, 2015.

14

15

16    _____

17    JAMES L. ROBART
      United States District Judge

18

19

20

21

22

ORDER- 14